# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STACY SERRANO-BEY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-3147** |
| | : | |
| **(LATTANZIO?) MUVHA,** ***et al.***, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**PADOVA, J.**                                        **FEBRUARY 16, 2024**

*Pro Se* Plaintiff Stacy Serrano-Bey asserts constitutional claims against several
Pennsylvania State Police officers,[1] the State Trooper Association, and the Philadelphia Highway
Patrol following a September 29, 2021 traffic stop while he was traveling northbound on
Interstate 95. (Compl. (ECF No. 2).) Serrano-Bey also seeks leave to proceed *in forma
pauperis*. For the following reasons, the Court will grant Serrano-Bey leave to proceed *in forma
pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state
a claim.

## I.    FACTUAL ALLEGATIONS

Serrano-Bey's Complaint consists of a completed standard form complaint (*see* Compl. at
1-5),[2] as well as additional typewritten pages, each of which contain a caption and symbols for
the "Moorish National Republic Federal Government" (*see id.* at 6-9). Serrano-Bey alleges in
his Complaint that on September 29, 202, between 9:00 p.m. and 10:30 p.m., he and his nephew

---

[1] The Complaint names the following officers: (1) "(Lattanzio?) Muvha," Badge No.
14417, (2) Kelble, Badge No. 11278, (3) Furguson, Badge No. 10476, (4) Corporal Rogers,
Badge No. 10661, and (5) Corporal Stine, Badge No. 10738. (Compl. at 1-2.)

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

were pulled over by a "Ford Explorer SUV, possibly black or grey in color, that read 'STATE TROOPER' on the side of the vehicle."  (*Id.* at 3; *see id.* at 6.)  Specifically, Serrano-Bey asserts that he first noticed the police SUV traveling to the left of his vehicle before it dropped back and pulled behind him. [3]  (*Id.* at 3.)  The "STATE TROOPER DRIVING the FORD SUV" then passed Serrano-Bey on his left side, went "a few cars ahead and then pulled off the road to the left shoulder in between [two orange] cones."  (*Id.* at 6; *see id.* at 3.)  Serrano-Bey drove past the police SUV and then looked into his rear-view mirror noticing that the police SUV had pulled back into traffic behind his vehicle with its emergency lights activated.  (*Id.* at 6.)

At this point, Serrano-Bey slowed down, "turned on [his] 4-way flasher," and told his nephew "to call 911 and tell them we are being pulled over un-lawfully."  (*Id.*)  The "STATE TROOPER" was driving "recklessly" when the police SUV pulled back up to the left-hand side of Serrano-Bey's vehicle.  (*Id.*)  The "TROOPER's partner" shouted for Serrano-Bey to pull over.  (*Id.*)  Serrano-Bey allegedly told him that "911 is on the phone" and that he would pull off at an exit in order to avoid "obstruct[ing] traffic."  (*Id.* at 3.)  Serrano-Bey contends that he was "not fleeing."  (*Id.* at 6.)  The police SUV pulled behind Serrano-Bey's vehicle before pulling up alongside his vehicle for the third time.  (*Id.* at 3, 6.)  Serrano-Bey saw the "TROOPER's partner" with "something dark pointed out the window" and asked him, "are you threatening me" and the partner allegedly shouted in response, "Yes I'm threatening you!"  (*Id.* at 3; *see id.* at 6.)

Serrano-Bey pulled over in the right-hand shoulder approximately a quarter of a mile from the Washington Boulevard exit.  (*Id.* at 3, 6.)  Two "TROOPERS" then approached his vehicle and told him that "they pulled [him] over because [his] tags weren't registered to

---

[3] Throughout the Complaint, Serrano-Bey refers to his vehicle as a "private automobile conveyance."  (Compl. at 3, 6-9.)

PENNSYLVANIA."  (*Id.* at 6.)  Serrano-Bey responded, "What is your probable cause and who is the injured party[?]"  (*Id.*)  One of the "TROOPERS" responded that his "probable cause is your tags weren't registered to the STATE OF PENNSYLVANIA."  (*Id.* at 7.)  Serrano-Bey responded that Pennsylvania "is a 'CORPORATION!'" and requested to speak with a supervisor.  (*Id.*)

Serrano-Bey alleges that he handed the "POLICY ENFORCER" twelve documents, including:  (1) a "color of law sheet," (2) UCC financing statements and amendments, (3) "allodial-lodial ownership common law registration to the trust . . . [and] truth a-1 permanent character," (4) written undertaking/surety bonds, (5) "images of Moorish plate," (6) "Bill of sale from S&W AUTO GLASS selling automobile to the trust StacyBey©," (7) copies of the front and back of the title, (8) "NORTHEASTERN TITLE LOAN title release letter 2-25-2020," and (9) an active "PENNSYLVANIA FINANCIAL RESPONSIBILITY CARD."  (*Id.*)  The paperwork was reviewed and allegedly returned to Serrano-Bey by one of the "TROOPERS" who told him, "Your paperwork is good and you have insurance but we have to take your car because you didn't register the car to the STATE OF PENNSYLVANIA."  (*Id.* at 7; *see id.* at 3.)

Serrano-Bey avers that when the "so-called supervisor" arrived, he asked Serrano-Bey to step out of his vehicle.  (*Id.* at 7.)  Serrano-Bey asked, "Why do I need to get out of the car?"  (*Id.*)  The "so-called supervisor" allegedly opened the door to Serrano-Bey's vehicle, grabbed Serrano-Bey's left shoulder and pulled him from the vehicle.  (*Id.* at 3, 7.)  Serrano-Bey avers that once he stepped out of the vehicle, "all of the POLICY ENFORCERS/STATE TROOPERS/HIGHWAY PATROL MEN laid hands on [him]."  (*Id.* at 7.)  He asserts that his chest was shoved against the side back window of his vehicle, and he was told to "stop

resisting." (*Id.* at 8.)

Serrano-Bey had to stand "for maybe 43 minutes steering [sic] into bright flood lights" while he was in pain "with handcuffs cutting off [his] circulation." (*Id.* at 3, 8.)  He was told "by one of the POLICY ENFORCERS/STATE TROOPERS/HIGHWAY PATROL MEN" that he was being detained and was not under arrest. (*Id.* at 8; *id.* at 3.)  A tow truck from the "PHILADELPHIA PARKING AUTHORITY [PPA]" pulled up to tow his car, and Serrano-Bey asserts that a "TROOPER put all documents received in the name of the prior owner of the automobile and listed her clearly on documents as the OPERATOR of the MOTOR VEHICLE in which he lied under oath." (*Id.* at 8.)  Serrano-Bey was then placed in the back seat of the "TROOPER's SUV" and taken to the "RIVERVIEW PLAZA parking lot" where he was released. (*Id.*)

On September 30, 2021, Serrano-Bey called the PPA and spoke with an "unidentified supervisor" to explain that the "the auto-conveyance stolen/impounded" was his private property with "a UCC financial statement commercial lien." (*Id.*)  The supervisor told Serrano-Bey that there was a lien holder that had to be satisfied, but Serrano-Bey told him that he had a receipt that the lien was "paid and satisfied." (*Id.*)  Serrano-Bey avers that the supervisor "was using fraudulent conveyance of languish and conspiracy, which is . . . fraud and slavery – forced compliance to contracts not held." (*Id.*)  Serrano-Bey went to the PPA later that day and handed "supervisor Kinardi 57P # KS651" his documentation. (*Id.*)  Serrano-Bey was allegedly told several times that his paperwork showed ownership, but he needed a court order in order to release the car. (*Id.*)  When the supervisor directed him to traffic court, Serrano-Bey replied, "TRAFFIC COURT is not even constitutionally sanctioned to even hear or rational an argument

[sic]" and further indicated that "this matter will be litigated in an Article 3 court of law." (*Id.* at 9.)

Serrano-Bey attaches to his Complaint, a copy of a Live Stop Towing Report issued by the Pennsylvania State Police and a copy of a Traffic Citation issued by the Philadelphia Municipal Court Traffic Division. (*Id.* at 10, 12.) Both of these documents refer to the traffic stop that was conducted by the Pennsylvania State Police on September 29, 2021. (*Id.* at 10, 12.) However, the vehicle operator and owner listed on the Live Stop Towing Report is Shemail Valdez Williams, and the report further indicates that Williams was cited with the operation of an unregistered vehicle in violation of 75 Pa. Cons. Stat. § 1301(a). (*Id.* at 10.) The Traffic Citation also indicates that Williams was charged with operating a vehicle without having a valid registration plate in violation of 75 Pa. Cons. Stat. § 1301(a). (*Id.* at 12.) Serrano-Bey appears to allege that Williams was the prior owner of the vehicle. (*Id.* at 8.)

Based on the foregoing allegations, Serrano-Bey avers that he has suffered emotional distress, anger and hostility which has impacted his daily functioning and resulted in a "Loss of Faith in the Justice System, Social Isolation and Stigmatization, Anxiety and Depression, [and] Distrust and Fear of Authority Figures." (*Id.* at 4.) He seeks a declaratory judgment that the Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights,[4] as well as an award of

---

[4] Declaratory relief is unavailable to adjudicate past conduct, so Serrano-Bey's request for declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another." (citations omitted)); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct." (citation omitted)). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (citation omitted); *see also Taggart v. Saltz*, 855 F. App'x 812, 815 (3d Cir. 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of parties, not to adjudicate past conduct where there is no threat of continuing harm." (citation omitted)).

compensatory and punitive damages in an unspecified amount. (*Id.*) Serrano-Bey also seeks injunctive relief directing the development and implementation of a "comprehensive and effective policy to protect the Amendment rights of the people." (*Id.*) He also requests the release of his "tags and all of [his] property seized." (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant Serrano-Bey leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[w]e accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (first, third, fifth, and sixth alterations in original) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Serrano-Bey is proceeding pro se, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III.    **DISCUSSION**

The Court understands Serrano-Bey to assert constitutional claims in relation to the

September 29, 2021 traffic stop and resulting impoundment of the vehicle he was operating.  The

provision by which federal constitutional claims may be brought in federal court is 42 U.S.C. §

1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988)

(citations omitted).  Serrano-Bey's Complaint is best construed as raising claims under the

Fourth Amendment in connection with the events of September 29, 2021.[5]

A.      **Claims Against the State Trooper Association**

Serrano-Bey names the State Trooper Association as a Defendant in this action.  (Compl.

at 1.)  The State Trooper Association is the exclusive, recognized bargaining agent for all

Pennsylvania State Police members covered under the Act 111 collective bargaining agreement.

*See Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n.*, 992 A.2d 969, 971 n.3

(Pa. Commw. Ct. 2010).  The Complaint fails to explain how the State Trooper Association was

involved in the alleged violations of Serrano-Bey's rights or legally responsible for the harm he

---

[5] The Fourth Amendment applies to claims of unlawful pretrial detention by law enforcement.  *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.").  Therefore, the Fourth Amendment, rather than any other constitutional provision, governs the analysis of Serrano-Bey's claims related to his detention by police on September 29th.  *Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (discussing the "more-specific-provision rule" pursuant to which claims should be analyzed under the standards relevant to the more specific provision of the Constitution under which that claim falls, rather than under the Due Process Clause).

sustained.  Accordingly, Serrano-Bey's claims against the State Trooper Association will be dismissed.

To the extent that Serrano-Bey intended to assert claims against the Pennsylvania State Police, any such claims are not plausible.  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Sch.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Pennsylvania State Police, as a department of the Commonwealth, shares in that immunity.  *See Shine v. Merenda*, 586 F. App'x 95, 97 (3d Cir. 2014) (*per curiam*); *Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) (*per curiam*); *Gillespie v. Pennsylvania State Police*, 574 F. Supp. 3d 272, 284 (E.D. Pa. 2021) (immunity extends to state agencies and departments, including the Pennsylvania State Police).  *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that states are not "persons" under § 1983 and therefore may not be sued in federal or state court under that statute); *Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("*Will* establishes that the State and arms of the State . . . are not subject to suit under § 1983 . . . .").  Accordingly, there is no basis for any claims against the Pennsylvania State Police either.

**B.      Claims Against the Philadelphia Highway Patrol**

Serrano-Bey names the Philadelphia Highway Patrol as a Defendant in this action. (Compl. at 1.)  The Philadelphia Highway Patrol is a specialized unit within the Philadelphia Police Department that serves as, *inter alia*, the primary enforcers of traffic laws within the city. *See* Philadelphia Highway Patrol, https://philadelphiahighwaypatrol.com/ (last visited Feb. 14, 2024).  Any claims against the Philadelphia Highway Patrol are not plausible.

Following the Supreme Court's decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See, e.g., Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.*; *Martin v. Red Lion Police Dep't*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Thompson v. New Jersey*, Civ. A. No. 05-4420, 2005 WL 2406100, at *3 (D.N.J. Sept. 28, 2005) (holding that a New Jersey police department is not a "person" subject to suit under 42 U.S.C. § 1983 (citations omitted)). Therefore, the Philadelphia Highway Patrol is not a proper defendant in this case under § 1983 and will be dismissed with prejudice.

### C.    Claims Against the Individual Defendants

At the outset, the Court notes that Serrano-Bey's Complaint does not specifically attribute conduct to any named Defendant.  In drafting his Complaint, Serrano-Bey frequently and collectively refers to the "TROOPERS" as a group without clarifying the specific basis for each Defendant's liability.  These types of allegations are not plausible because "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that liability in civil rights action "cannot be predicated solely on the operation of *respondeat superior*."); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

9

Where there are multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific acts of each Defendant that forms the basis for that individual's liability. *See Lawal v. McDonald*, 546 F. App' x 107, 113-14 (3d Cir. 2014) (concluding that the plaintiff's "collective use of the word 'Defendants'" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff). Serrano-Bey's allegations that a "TROOPER" threatened him with "something dark pointed out the window" and unlawfully pulled him over, that two "TROOPERS" approached his vehicle, that a "so-called supervisor" pulled him from his vehicle and that "all of the POLICY ENFORCERS/STATE TROOPERS/HIGHWAY PATROL MEN laid hands on [him]" do not adequately identify to whom he refers. (Compl. at 3, 6-7.) Accordingly, we will dismiss Serrano-Bey's claims against these Defendants for failure to sufficiently allege each Defendant's personal involvement. We will also, however, address other defects in Serrano-Bey's claims that are similarly sufficient to support dismissal.

### 1.    Traffic Stop

Serrano-Bey alleges, *inter alia*, that he was "unlawfully pulled over" in violation of his Fourth Amendment rights. (*Id.* at 3; *id.* at 4, 6.) The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is well-settled that the temporary detention of individuals during a traffic stop is a "seizure" of "persons" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (citations omitted). Traffic stops may be initiated based on a reasonable suspicion that a traffic violation has occurred. *United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018) (citing *Navarette v. California*, 572 U.S. 393 (2014); *United States*

*v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006) (adopting reasonable suspicion, not

probable cause, as the applicable standard)).  Where police have directly witnessed a traffic

violation, a traffic stop is a reasonable seizure under the Fourth Amendment.  *See United States*

*v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("[A] traffic stop is lawful under the Fourth

Amendment where a police officer observes a violation of the state traffic regulations." (citations

omitted)); *see also Kansas v. Glover*, 140 S. Ct. 1183, 1191 (2020) (traffic stop was lawful

where "[u]nder the totality of the circumstances of this case, [law enforcement officer] drew an

entirely reasonable inference that [plaintiff] was driving while his license was revoked").

    "A seizure for a traffic violation justifies a police investigation of that violation."

*Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  "[T]he tolerable duration of police

inquiries in the traffic-stop context is determined by the seizure's 'mission' — to address the

traffic violation that warranted the stop, and attend to related safety concerns."  *Id.* (internal

citations omitted).  "Typically such inquiries involve checking the driver's license, determining

whether there are outstanding warrants against the driver, and inspecting the automobile's

registration and proof of insurance."  *Id.* at 355 (citations omitted); *see also* 75 Pa. Cons. Stat. §

6308(b).  "These checks serve the same objective as enforcement of the traffic code: ensuring

that vehicles on the road are operated safely and responsibly."  *Rodriguez*, 575 U.S. at 355

(citations omitted).

    According to the Complaint, Serrano-Bey was pulled over "because [his] tags weren't

registered to PENNSYLVANIA."  (Compl. at 6-7.)  As noted above, a violation of traffic laws

observed by an officer, such as an invalid registration or license plate, is a permissible reason for

a traffic stop.  *See United States v. Yusuf*, 993 F.3d 167, 171-72 (3d Cir. 2021) (traffic stop on the

basis of a partially obstructed license plate "was conducted within the bounds of the Fourth

Amendment"); *United States v. Toney*, 124 F. App'x 713, 715 (3d Cir. 2005) (officer justified in stopping vehicle with an invalid license plate); *United States v. Griffin*, Crim. A. No. 07-0374, 2009 WL 2215086, at *3-4 (E.D. Pa. July 23, 2009) (traffic stop was justified because officer "'ran the tag' through the PennDOT computer" and determined that the vehicle was improperly registered); *Delaware v. Prouse,* 440 U.S. 648, 663 (1979) (holding that traffic stops are justified under the Fourth Amendment where the officer has a reasonable suspicion that either the motorist or the vehicle are in violation of the law); *Commonwealth v. Henley*, 909 A.2d 352, 358 (Pa. Super. 2006) (holding that an expired registration is a violation of the Motor Vehicle Code). Moreover, Serrano-Bey does not allege that the officers had no basis for perceiving a traffic violation at the time of the stop.  Indeed, a current Pennsylvania registration is notably not among the twelve documents he claims to have provided to the officers.  (*See* Compl. 7.)

Serrano-Bey's failure to allege that the officers lacked reasonable suspicion to believe a violation had occurred, coupled with the fact that he was charged with driving a car with an expired registration, renders any Fourth Amendment claim based on the initial stop not plausible. *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)).

### 2.    Seizure of Vehicle

The Complaint also fails to state a claim based on the towing of Serrano-Bey's vehicle. Pennsylvania law provides that when a law enforcement officer verifies that a person is operating a motor vehicle that does not have a valid registration or its registration has been suspended, "the law enforcement officer shall immobilize the motor vehicle . . . or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent."

75 Pa. Cons. Stat. Ann. § 6309.2(a)(2).  Since the Complaint alleges that the officers learned Serrano-Bey was operating a vehicle with an invalid and/or expired registration (Compl. at 3, 6-7, 10, 12), it was permissible for the officers to tow the car pursuant to Pennsylvania law.  *See Perry v. Faddis,* Civ. A. No. 22-4012, 2023 WL 144432, at *5 n.11 (E.D. Pa. Jan. 10, 2023) (citing *Sheller v. City of Philadelphia*, Civ. A. No. 11-2371, 2012 WL 4754820, at *6 (E.D. Pa. Oct. 5, 2012) (explaining that the language of the statute "provides law enforcement officers with the option to tow based on their determination of the interest of public safety")).

Notably, the law also provides for a means by which the owner or a lienholder of any vehicle can retrieve the vehicle.  75 Pa. Cons. Stat. § 6309.2(d).  To the extent Serrano-Bey is raising a procedural due process claim based on the towing of his vehicle, he does not explain why these post-deprivation procedures are insufficient to provide any process due.  *See Mancini v. Northampton Cnty.*, 836 F.3d 308, 315 (3d Cir. 2016) ("Fundamentally, procedural due process requires notice and an opportunity to be heard . . . 'at a meaningful time and in a meaningful manner'") (citing and quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *Mawson v. Pittston City Police Dep't*, Civ. A. No. 16-00400, 2017 WL 4324840, at *15 (M.D. Pa. Jan. 20, 2017) (concluding, in the towing context, that "[c]ourts have recognized that a state-law conversion or replevin case provides an adequate post-deprivation remedy in situations of seized property"), *report and recommendation adopted*,  2017 WL 4366446 (M.D. Pa. Sept. 28, 2017).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Serrano-Bey leave to proceed *in forma pauperis* and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Serrano-Bey's claims against Defendants "(Lattanzio?) Muvha," Kelble, Furguson,

Corporal Rogers, Corporal Stine, and the State Trooper Association are dismissed without prejudice and Serrano-Bey may file an amended complaint if he can cure the defects the Court has identified in his claims against these Defendants.[6]  The Philadelphia Highway Patrol is dismissed with prejudice.  An appropriate Order follows.

**BY THE COURT:**

/s/ John R. Padova, J.

_____

**JOHN R. PADOVA, J.**

---

[6] Should Serrano-Bey choose to file an amended complaint, he is encouraged to avoid couching his claims in Moorish sovereign citizen verbiage and to avoid the use of legalisms. "Courts throughout the country have decisively rejected . . . arguments" couched in "legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement."  *United States v. Wunder*, Civ. A. No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (collecting cases) (discussing the futility of sovereign citizen verbiage in defense of tax collection claim); *see also United States v. Crawford*, Civ. A. No. 19-15776, 2019 WL 5677750, at *1 (D.N.J. Nov. 1, 2019) (rejecting as "utterly without merit" defendant's sovereign citizen-type claim that he was not required to respond to a complaint because "because he has surrendered the all-capital letter version of his name to the Department of the Treasury"); *Banks v. Florida*, Civ. A. No. 19-756, 2019 WL 7546620, at *1 (M.D. Fla. Dec. 17, 2019) (observing that "legal theories espoused by sovereign citizens have been consistently rejected as 'utterly frivolous, patently ludicrous, and a waste of . . . the court's time, which is being paid by hard-earned tax dollars'" (alteration in original) (quotation omitted)), *report and recommendation adopted*, 2020 WL 108983 (M.D. Fla. Jan. 9, 2020).